Case number 24-5325 Phoenix Insurance Company et al. v. Wehr Constructors Inc. Oral argument is not to exceed 15 minutes per side. Mr. Boyle, you may proceed for the appellant. Good afternoon, and may it please the court, my name is Mark Boyle with the firm of Boyle, Leonard & Anderson, and I'm here on behalf of the appellant. In this proceeding, the defendant below, Wehr Constructors, and I've already informed your that I'd like to reserve my three minutes for rebuttal. I see the timer going there. Thank you. My client, Wehr Constructors, was engaged by the St. Clair Medical Center to oversee the construction of the MSP facility, which was an addition slash connector directly physically abutting the existing St. Clair Medical Center facility. My client brought to this project every form of commercial insurance that's available in the marketplace to address the risk from this construction. My client had a commercial general liability policy, an excess insurance policy, construction management insurance, and a performance bond. All of these products were issued by different entities, but all entities within the traveler's family of insurers. To my client, who paid hundreds of thousands of dollars for these products, if travelers is to be believed, my client purchased all of these products and they essentially redounded to where to no legal effect, leaving them completely bare to address the physical damage, life safety issues, in the claims, and in the eventual pleadings alleged by the plaintiffs. We respectfully submit that this unjust result is not countenanced by the policies of insurance sold to my client or Kentucky law. Mr. Boyle, is it Mr. Boyle? I almost called you Mr. Ware. I know that's all right. You're invoking the insurer's duty to defend, but that's also their right to defend. And so one question I had is whether you actually asked the insurance companies to defend you, because it sounds a little bit, or whether you needed to, or whether that matters in the litigation. It sounds like you were saying throughout that, oh no, we don't think these policies are coming into play. And then after the fact, asked for indemnification. We did ask for both indemnification and defense. My opponents have not raised any claim of a breach of a condition of the policy that we did not request the defense. But they've raised other issues. Obviously the district court agreed with them, and the court is correct in the next forum in my outline is to talk about the duty to defend. We are here about the duty to defend. I would like to hear a little more answer to the question by Judge Larson, because there's a good bit in the record about counsel saying we're not making any claim against one of the insurance companies. We don't think that coverage that is at issue in the actions that are being undertaken. Why is that not a problem to your claim now? I'm not sure I understand the question. Maybe, poorly said by me, I think there is a question of did you not during the course of the buildup to this appeal say that some of these policies were not applicable to the problems that were experienced between the parties? In our reply brief, he conceded that the policy claim wasn't properly addressed at the district court by us, and we focused on the two primary policies. But I don't think there's a dispute. And again, my opponents have not pled any failure of conditions or notice, which would have to be pled specifically in order to trigger our obligation to address those issues. And as I read the district court's opinion, the district court did not hold against us on any basis related to our failure to request a defense. Instead, the district court substantively found we weren't entitled to one. Oh, I would agree with the latter. Thank you for saying that. And I'm sorry to have gotten off topic. We are here about the duty to defend, and I frame that typically as a negative. The Kentucky law and the law nationally is consistent with the law of Kentucky, recognizes that there are two distinct duties under a liability insurance policy, both the construction management insurance and the CGL insurance. It's the duty to defend or pay for a lawyer or assign a lawyer or the duty to indemnify or pay the judgment. We're not here about that because we agree with them, and that's why we stipulated to come to this appeal that if there's no defense obligation as a matter of law under Kentucky law, we're not entitled to indemnity. So if we can't clear the first and lower hurdle, we can't make it to the second hurdle in any event. The way Kentucky law, and as I noted nationally, this issue is framed, a carrier's duty to defend exists based on the allegations of the complaint, not the actual facts. And a carrier is required to defend if the complaint potentially, possibly, or might invoke coverage. So it's a very low bar and it's purposefully so to make clear that if there's any doubt, most jurisdictions say all doubt is to be resolved in favor of the defense obligation. And it's along those lines that we're hanging our hat here in this case. All right, but let me ask you this. I mean, it's pretty clear under Kentucky law that you have, that Phoenix had no obligation to pay for faulty construction of the work that we're engaged in. Is that correct? You agree to that, don't you? I agree with that and I'm aware of it academically. I won the case at the Florida Supreme Court that says the opposite. But Kentucky is on a chart on my wall in my office as recognized as one of the jurisdictions that says those claims are not covered. Okay, so why is Phoenix liable? What was the occurrence or in fact accident that would cause Phoenix to have a duty to defend where for what was done in this case? It's the broad allegations of the complaint. Our position is that the allegations of the complaint filed against the surety included allegations of water intrusion that for sure might well have affected the construction we performed, which would not be covered under Kentucky law. We acknowledge that. But that those allegations are at least broad enough that the water intrusion and associated claims in the complaint could have made reference to damages to the existing structure. The complaint is just- It's about paragraph 45 of the complaint, paragraph 45. It says as a result of water condensation throughout the MSP, mold conditions permeate the entire facility endangering the health of patients and staff. And is that the paragraph we're talking about? I would say that's the best one for my client's position. Paragraph 44 makes clear the broad nature of the problems. Paragraph 46, severe water condensation. Paragraph 47, interior water condensation. But so in order for this to work for you, we have to read permeate the entire facility to mean permeate the existing to which the MSP was to be annexed? Yes, and I would respectfully submit that's how the duty to defend works. We're supposed to interpret those allegations broadly in favor of the idea that the insurer is entitled to the defense. So yes, that's the answer. So even if the most natural reading, even if we would think the most natural reading- And then the reference permeate the entire facility refers to the MSP. It could conceivably mean maybe the hospital next door to defend. So your position is you could win on that even if we think the most natural reading is entire facility means MSP. Especially when you read the other allegations that I highlighted, paragraphs 44, 46, and 47. And the fact that they're mentioning life safety issues, which almost certainly implicates the existing facility. The case that we cited that we think is most syllogistically like this case is a forwarded decision, which is probably why I knew about it to think decided as a case called Biltmore versus auto owners. And wait, where are you talking about life safety issues? Air and air versus ambient temperatures? Where are we talking about life safety issues? There's a reference in the plaintiff's complaint to exhibit F, which is a life safety and big building integrity code violation. Exhibit F is referenced in the plaintiff's complaint at the end of page 51. Okay. All right. That Biltmore versus auto owners decision, and it's important to understand that case was decided before I won the case I was discussing at the Florida Supreme Court that broadened the availability of insurance for defective construction. So at the time that case is argued, the only coverage under Florida law is just like the regime in Kentucky for CGL coverage. There's only coverage if there's damage to something other than the contractor's work itself. And that claim, just like this one, alleges water intrusion and water problems related to the claims or complaints against the insured, but it's not specific about whether or not it's damaged to the construction itself or to other elements of the property that are not the subject of the construction contract. And the court, using traditional duty to defend principles, the ones that are the same under Florida law nationally and under Kentucky law, says because we cannot definitively discern whether or not there is water damage to another element and the duty to defend has to be construed broadly, we're going to require that the insurer defend. And with my last minute before rebuttal, I'd like to talk about... Well, before, you'll have time to have your last minute. I just want you to give us your explanation of how Martin Elias applies in this situation. I guess we would only cite that for the breadth of the defense obligation. That's really the answer, if I understand the court's question. I guess what I was struggling with was that my understanding is that the Kentucky courts have not applied the exception described in Martin Elias. Is that your understanding also? I agree. As I understand it, there is no Kentucky case definitively stating that if there's damage by the construction outside of its scope, that it would be covered in the way we described. But that is the majority rule of even those limited jurisdictions like Kentucky and Ohio that have said there's no construction. There is one jurisdiction, to be fair to the court, this wasn't all brief by the parties. Pennsylvania takes the view that even the resulting third-party damage to the existing property isn't covered. But the majority of jurisdictions that have addressed that issue, even where there's no coverage because defective construction is not an occurrence, say the third-party damage is covered just like that Biltmore case that I cited. I'm over my time. If the court wants supplemental briefing on that issue, we're happy to provide it. No, but you may take your minute. You had one other point that you would like. Please do. I appreciate that, Judge. Paragraph 16, I know one of the arguments that my opponents have and one of the arguments the district court made was that we were not sued directly by the claimants and that's fatal to our position. But if the court looks at paragraph 16 of the complaint against the surety who eventually brought us into that suit, it says, upon information and belief as a compensated surety, Travelers has a written agreement with Weir that Weir will indemnify Travelers in the event of and following any payments by Travelers. So the arrows and the cannons were always pointed at my client, even when they weren't sued directly. I think it's hyper-formalistic to fail to recognize that the suit against Travelers, which we were eventually brought into, was really a suit against us. And Travelers knew it. That's why they brought us into the suit. And I'm over my time. I cede the lectern. Thank you, Your Honors. Is it Risley? Yes, Your Honor. It is. Thank you. May it please the court, counsel. Let me pick up near where Mr. Boyle ended, or actually, Judge Strange, where you raised the issue about the Martin Elias case from the Kentucky Supreme Court, which we believe is directly on point and is totally fatal to Weir Constructor's position. And it goes back to Judge Gilman's question about the Cincinnati Insurance Company v. Motors Mutual case, in which the Kentucky Supreme Court held that there was no coverage under liability policy for faulty workmanship. And so the question is whether, what if the work that the insurer is doing injures or damages some other property or some other part of the structure? And that's exactly what the Supreme Court of Kentucky addressed in the Martin Elias case. It says, although his work was to be done in the basement, Gosney's poor workmanship resulted in damage throughout the entire property, making it structurally unsound. Now, that sounds a lot like Mr. Boyle's description of paragraph 45 of the complaint, which I agree with you, Judge Larson. Fairly read, it says the damage was to the medical service pavilion. But even... Wait just a minute, just a minute. That Martin Elias case, though, the project included those upper floors, though, did it not, as opposed to here? The work that was to be done was only to the basement. Sure, if there was no work, the contract for the upper floors as well? I don't think by this subcontractor, Your Honor. But maybe I'm, maybe I don't have that correct. But you do, but I mean, and that would make a difference. I mean, if in fact, it would be exactly analogous if in fact that was totally outside the work of, you know, the project. On the other hand, if that Martin Elias, the upper floors were part of the work, then it would be not like what we're talking about here. I would also rely on the case that we cite from the Sixth Circuit, McBride v. Acuity, which cited our brief, where the court in deciding the scope of the limitations or the what's covered or not covered under liability policy says, therefore, the best evidence as to what rule the Kentucky courts would adopt strongly suggests that it would only adopt the version that permits coverage when someone else's property rather than the insured's non-faulty workmanship is damaged by the work of the The basis of the decision in Cincinnati Insurance versus Motors Mutual was that there was no occurrence that the faulty workmanship which caused the damage was not an occurrence for purposes of a liability policy. And under that rationale, then whether the damage is to part of the same structure, the upper floors or whatever, it's not damage caused by an occurrence because the faulty workmanship, the alleged cause of the damage is not an occurrence. And under that rationale, which is the rationale adopted in all of these cases that we've talked about, there can be no damage regardless of whether the property is part of the same structure or a different structure or whatever. Well, the idea of the exception that a lot of these other states have is that, well, it could be an accident because it was damaged to something beyond the scope of the project. I mean, you know, that you would normally have water damage, you know, if you have water damage within your own project, hey, you know, that's what a performance bond is for and that's not what Phoenix provided. But on the other hand, if it damaged the adjacent structure or a part that was beyond the project, maybe that is an occurrence. Well, you know, the cases that find that there may be coverage that usually do that on the basis of whether it's property damage or not. But the Cincinnati Insurance Company case was decided on the basis of whether there was an occurrence and under what the Kentucky Supreme Court decided in that case. And that was my case. I argued that case. And so I'm very familiar with the case and the cases that it comes in. It is not an occurrence. What where constructors did is not an occurrence. And so, therefore, damage that flows from that was not caused by an occurrence. Because occurrence means accident, is that correct? An occurrence means accident. And under the Cincinnati Insurance case, it introduces the element of fortuity. And since the where constructors had control of the construction, then their fault in construction was not an accident. The district judge didn't decide any of this, right? The district judge just decided that the policies didn't apply because you didn't sue where directly. I mean, where was brought in as a defendant, but you didn't sue where directly? The owner. I'm sorry. Do you want to speak to that? Because if that's wrong, then none of this matters. That's correct. And the district court decided that correctly because the Phoenix policy provides that there is a duty to defend a suit seeking damages covered by the policy. It doesn't say, though, a suit in which where is named as a defendant, does it? That's not in the language of the policy. Well, but the language of the policy says Phoenix will pay those sums that where becomes legally obligated to pay as damages because of bodily injury or property damage to which the insurance applies. So damages covered by the policies are damages or those sums that where becomes obligated to pay as damages because of bodily injury or property damage. Now, I'm going to this. Let's assume this hadn't settled, you know, once the suit was brought and travelers surety brought where and as a not as a as a party, although not as a third party defendant. But if if it had not settled and St. Clair had gotten a judgment against traveler surety, wouldn't and then traveler surety turns around to sue where for indemnity, wouldn't where have been bound to have raised any barred from any subsequent defense defenses that it had not asserted in that St. Clair litigation? I don't know how that would play out, Your Honor. No, there were no claims asserted against where constructors in the bond litigation. You think that where could relitigate that claim? Well, I mean, under the Kentucky statute, it had notice of the set of the claim. How could it now relitigate the underlying contract claim or there might be there might be defenses that did not come out in that that that would apply. But I think you're I think one of the reasons they were brought in was try to get them to be bound by whatever decision was made in the bond litigation. But let's let's discuss what what was decided in the bond litigation. All that was decided in the bond litigation was that the bonding company had a duty to complete the project pursuant to the contract that where constructors had with St. Medical. They had that duty because we're breached, right? That's correct. That's great. Okay, that's correct. That's correct. But the damages to the extent there were damages that flow from that, it was only the damages that were the result of completing the project pursuant to the terms of the contract. And that's exactly what the court in Cincinnati Insurance Company versus Motors Mutual. That's the second question. That's the second question. The one we started with, but it's right. Well, the second the first question was right was was the duty trend. And Judge Larson, you asked questions about the whether where constructors actually had requested a defense. There were discussions between Phoenix and where constructors and where constructors counsel said, I don't think this is a liability claim and we don't want the insurers to be involved. What Mr. Boyle says about that is that you didn't say in this litigation. Well, one reason we don't have a duty to defend is because he never asked us to defend or didn't ask us in a timely fashion so that we lost our right to defend in the litigation. And now he's, you know, got this settlement and we didn't have a chance to defend him. Right. Well, I don't I don't think we had an obligation to and I don't think that we actually had an opportunity to because the only thing the court decided the only order orders the court entered was a denial of where constructors motion for partial summary judgment. After the court decided that the court stipulated that meant there was no duty to defend. There was no duty to to indemnify according to the stipulation. And so the only issue is whether there's duty to defend. We we never had the excuse me, the necessity to raise any issues because the party stipulated that based on what the court had said, there is no one for summary judgment saying you had a duty to defend me. You could have said, no, we didn't. No, we don't, because you didn't timely assert your your right to ask us to timely defend you. Well, we raised that in our briefing to the district court. Yes. Oh, absolutely. Absolutely. The items that we signed in our briefs relating to the between where constructors and the insurers were in our briefing to the district court. The district court didn't decide that issue, did it? But of course, this court can confirm on any basis that's reflected in establishing the record. What the district court did decide was that there is no suit seeking damages covered by the policy. And the court was correct in that because there was no suit against where constructors seeking sums that were where would become legally obligated to pay his damages because of bodily injury. What about paragraph 17 and 18 in the complaint that speaks to the indemnity that has a written agreement with where with it where and its owner will indemnify travelers? Why doesn't that? Why isn't that an accusation or an allegation in the complaint that there was money? Where's money? Where's payments were backing up? By indemnity, there was there was never any dispute that no part, neither the medical center or the bonding company filed any claim seeking damages against where constructors. But that's not the question. The question is whether where's money and debt owed is involved in this suit. And this complaint says that travelers has a written agreement with where and where it's going to have to indemnify travelers. Well, I think under the terms of the policy, it's not whether there are allegations that the sums were involved. It's that whether there was a suit seeking damages and there is no claim asserted against where constructors seeking damages. Everybody agreed to that, that there was no claim seeking damages asserted against where constructors. Right. Not not not by St. Clair and not not in this lawsuit by Traveler's Surety. But the allegations, as Judge Strands points out, is that Traveler's Surety has a right of go against where once this matter is resolved and whatever Traveler's Surety pays out. And so the question is, wouldn't that trigger a duty to defend where by Phoenix? That the the potential of a lawsuit down the road does not trigger the duty to defend. The duty to defend is triggered by a suit seeking damages covered by the policy. But then that raises the point that I think Judge Larson started out with. I mean, didn't it? Or maybe your counsel, Mr. Boyle, that that if it's even potentially possible, there could be a duty to defend. Under Kentucky law, there is that duty, even if it turns out ultimately not to be the case. The duty to defend is broader than the duty to indemnify. But there still has to be a suit seeking damages covered by the policy. The fact that there's a potential for a claim at some point in the future is not does not actively activate the duty to defend. But even if it did, it still would have to be damages covered by the policy, which raises the Cincinnati Insurance Company versus Motors Mutual issue. And the district court didn't reach that question. The district court did not reach that question because the district court concluded that there is not a claim seeking damages against Swearer and therefore there is no duty to defend. But isn't the question here a very specific standard that the duty to defend is triggered by a suit alleging damages that potentially, possibly, or might come within the coverage of policy? Isn't it those what sometimes we officially call wiggle words that enable people to look at this in its entirety, rather than saying there has to have been a suit brought, it only in fact has to be a potential or a possibility in order to trigger the duty to Isn't that correct? Under Kentucky law. I mean, obviously, you're quoting from Kentucky law on the duty to defend. But again, the lawsuit that was filed was not a suit for damages against anybody. It was a suit against the bonding company to complete the project pursuant to the terms of the general contractor. And we understand that. And the complication is, though, that the traveler surety, the bonding company then brings where in as a party and claims the right to indemnity against where that is, as you say, a complicating factor. But the medical center objection saying we do not wish to assert a claim against where constructors, the bonding company says we are not asserting a claim against where constructors where constructors says there's no claim being asserted against us. We are added as a party, but there is no claim asserted against us. Everybody agrees that there's no claim asserted against the bonding company and the hospital can just agree that, well, we'd like to just litigate this ourselves and decide by ourselves that we're committed to breach of contract. And then having that judgment, the bonding company can go after where and where never gets a chance. Well, I think we would have a chance to defend any lawsuit, any claim that was brought against it, of course. Not if they're bound by the litigation that they were a party to. Well, again, the fact that they were brought in as a party, but there was no claim seeking damages asserted against them. But they were brought in so that because the whole the sureties liability turned on whether where breached the contract and in what way and to what extent. That is correct. Yeah. And so once that's determined, then if the surety loses the lawsuit, then the surety doesn't really care if it loses the lawsuit. It can go and sue where now. And where it doesn't get to say, but wait, I didn't breach the contract. Well, I think the surety company is concerned about whether they win or lose the lawsuit because there might be other reasons. But he might not have the assets or whatever, but assuming that they're not judgment proof. Right, right. So I'm sorry. Have you seen a case like this before? Yeah, I have not. But I have I have seen plenty of cases where insured seek coverage for damages caused by faulty workmanship. And there's never coverage for that under Kentucky law. Right. That's the second question. That's the second question. So even if even if the district court got the first question wrong under the second question, there's no coverage. And so therefore, there is no duty to defend. Because the duty to defend only exists if there's a possibility of coverage. But so far, nobody's made that determination, including the district court has not made that determination yet. Because it didn't reach the second question. It did not reach the second question. But the facts established that there was no coverage under the Cincinnati insurance company case and the other cases we've talked about today. That's your position. I understand. Whether that's the law for us to decide. Well, obviously, you all get to decide what what what you interpret Kentucky law. That's your role. Absolutely. My time is up, obviously. Further questions, Mr. Boyle. I want to go to Judge Larson's last point that it's the subject of exchange. The danger there is even more pernicious because all of these entities are travelers. Travelers thus in choosing not to sue us for indemnity until after they forced us to pay, placed themselves in control of that and left my client in an extremely awkward position. I don't think the formalism of us being sued for damages under the unique facts of this case, where we're clearly going to be bound, should determine the issue. Judge Strange asked me a question and I misunderstood the question. She was talking about the second of the two Kentucky Supreme Court cases that said defective construction wasn't an occurrence. I thought it was one of the defense cases. I apologize. I didn't remember the names of the cases. So in the first of the two cases, Cincinnati versus Motorist, they spell out and they cite Couch on Insurance. It's a national insurance treatise for the proposition that the general rule is the damage to the existing hospital would be covered. And that comes up again in Martin Elias. And they say, and I think Judge Gilman's correct, the facts are it was all of the contractor's construction. And they say significantly the court stated then the facts of it. Acuity did not provide it with the opportunity to address the general rule. So they didn't get to address it again in that case, citing back to their Martin case. So I think the facts are clear. There is no third party property damage in Martin Elias. All that one contractor's work, they did the top and the bottom. I'll let the court read the case to see if I misunderstood. On this late notice issue that Judge Larson raised, it's definitely not raised in this appeal. So the Tipsy Coachman doctrine only applies if they brief it. That's not here. They didn't raise that even if they raised it at the district court. And they denied the claim in any event under the law of every jurisdiction. If you unconditionally deny the loss, you don't have a duty to comply with the conditions. I think the most important fact in this case is the one that's been the focus of this oral argument. I appreciate the hot panel and its questions. The coverage ban of the CGL policy is, and counsel read it earlier, we will pay those sums that the insured becomes legally obligated to pay because of property damage. And the allegations against the surety case we were brought into to be bound, that was just conceded in this oral argument, and would have bound us by whatever happened, were for some potentially covered damages. Maybe it was to the neighboring property. I acknowledge most of it was not. But if one centilla of those damages were possibly or might or potentially covered, the carrier was required to defend us under the general and majority rule. And to the extent that that legal rule hasn't been resolved by Kentucky, that too should be interpreted broadly in favor of the duty to defend. I have eight seconds left. I'd ask the court reverse and find there was an obligation to defend. And then what would happen? We would have to send this back to the district court for further proceedings. Is that your thought? My thought is the duty to defend the legal question, and it can be answered by this court. It should be answered in my favor. I understand the court might determine that some of these issues should be addressed by the district court in the first instance. And we have no objection to that if that's the path that the court chooses. If you remand under the standard we request that you find a duty to defend, we'd have a limited trial, probably motion practice, on the damages of the attorney's fees on the duty to defend. And typically those matters get worked out. I have been to one trial in my 31 years over duty to defend damages because those matters tend to get worked out, as the court might imagine. Well, we thank you both for your good oral argument and your briefing. Quite helpful in a multi-insurance policy issue and the complexity that goes with those types. One quick question. I just want to make sure. You keep talking about all this is travelers. Does that mean that Phoenix, St. Paul are also traveler companies? They are. Okay. Travelers depended on Phoenix, right? Those were tied together as far as the liability question, right? May I answer that question? Please.  Phoenix issued the general liability policy. The traveler's property policy was an excess policy, excess liability policy. Separately, of course, there was the traveler's bonding. Yeah. But yeah, Phoenix issued the and traveler's property issued the... Where does St. Paul fit into this? St. Paul was a separate professional liability policy. But it was also under the traveler's general overall companies? They are a company that is owned by travelers, whatever.  If it pleases the court, may I say something unrelated to the merits of the case? You can do it quickly. I want you to understand how impressive your staff was in making sure that this was set up and done right and the technology worked. I've done a lot of these in a lot of jurisdictions. Your staff was incredible. Well, we have Deputy Gifford here, and we can thank him for their good work along with Marshall Mitchell. Our IT department is excellent. That was my point. Thank you, Your Honors. There being nothing further, no further questions. Thank you for appearing by Zoom. This is our only case by Zoom on this call. So you may dismiss and adjourn court.